IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| ASHLEY RENEE BARRON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO.:  2:14-cv-922-WC |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

# MEMORANDUM OPINION

## I.  INTRODUCTION

Ashley Renee Barron ("Plaintiff") filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401, *et seq*, on May 24, 2012.  Her application was denied at the initial administrative level.  Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ").  Following the hearing, the ALJ issued a decision finding Plaintiff not disabled from the alleged onset date of July 1, 2011, through the date of the decision.  Plaintiff appealed to the Appeals Council, which rejected her request for review of the ALJ's decision.  The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).

---

[1]    Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

The case is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 10).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.    STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?
> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability.  A negative

---

[2]    A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4.  *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004).  A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4.  At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform.  *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC").  *Id*. at 1238-39.  The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence.  *Id*.  It may contain both exertional and nonexertional limitations.  *Id*. at 1242-43.  At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform.  *Id*. at 1239.  To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE").  *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of job experience.  Each factor can independently limit the number of jobs realistically available to an individual.  *Phillips*, 357 F.3d at 1240.  Combinations of these factors yield a

---

[3]   *McDaniel* is a supplemental security income case (SSI).  The same sequence applies to disability insurance benefits.  Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4]   *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

statutorily-required finding of "Disabled" or "Not Disabled." *Id.*

The court's review of the Commissioner's decision is a limited one.  This court must find the Commissioner's decision conclusive if it is supported by substantial evidence.  42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence.").  A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings.  . . .  No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

## III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff, who was thirty-five years old on the alleged disability onset date, has an eleventh-grade education.  Tr. 27.  Following the administrative hearing, and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since July 1, 2011, the alleged onset date[.]"  Tr. 16.  At Step

Two, the ALJ found that Plaintiff suffers from the following severe impairments: "fibromyalgia, degenerative disc disease, myalgias, occipital nerve neuralgia, history of gastritis, depression, and anxiety[.]"  *Id.*  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  *Id.*  Next, the ALJ articulated Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b) except [Plaintiff] can occasionally climb stairs and ramps, balance, stoop, kneel, crouch, and crawl.  She can never climb ladders[,] ropes[,] or scaffolds.  She can never work at activities involving unprotected heights, hazardous machinery, moving mechanical parts, or vibration.  She should avoid concentrated exposure to humidity or wetness.  She is limited to simple tasks.  [Plaintiff] should have a sit/stand option with the ability to change positions every thirty minutes.

Tr. 17-18.  Having consulted with a VE at the hearing, the ALJ concluded at Step Four that Plaintiff "was unable to perform any past relevant work[.]"  Tr. 27.  Finally, at Step Five, and relying upon the testimony of the VE, the ALJ determined that "[c]onsidering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant can perform[.]"  *Id.*  Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as defined in the Social Security Act, from July 1, 2011, through the date of th[e] decision[.]"  Tr. 28.

## IV.   PLAINTIFF'S CLAIMS

Plaintiff presents the following issues for this court's consideration in review of the ALJ's decision:  (1) whether "[t]he Commissioner's decision should be reversed

because the ALJ erred as a matter of law in failing to discuss, much less consider, the severity and impact of [Plaintiff]'s obesity, in combination with her other severe and non-severe impairments, as required"; (2) whether "[t]he Commissioner's decision should be reversed because the ALJ erred as a matter of law in failing to discuss, much less consider, the side effects from [Plaintiff]'s medications on her ability to work, as required"; and (3) whether "[t]he Commissioner's [d]ecision should be reversed because the ALJ erred in relying on the opinion of a Single Decision Maker in arriving at her RFC assessment." Pl.'s Br. (Doc. 12) at 3.

## V.   DISCUSSION

### A.   Whether the ALJ properly considered the severity and impact of Plaintiff's obesity in combination with Plaintiff's other severe and non-severe impairments

Plaintiff argues that "the ALJ never discussed or even mentioned Plaintiff's obesity and its impact on her other severe and non-severe impairments." Pl.'s Br. (Doc. 12) at 7. Plaintiff asserts that based on a height of five feet five inches tall and a weight ranging from 190 to 228 pounds at all times relevant to this proceeding, Plaintiff should be classified as obese. *Id.* at 6. Plaintiff states that her Body Mass Index ("BMI") has consistently been over 30, "indicat[ing] that she has been obese throughout the entire relevant time period of her claim, with her obesity ranging from Level I obesity to Level II obesity." *Id.* at 6-7. Plaintiff asserts that "[b]y failing to discuss the severity of [Plaintiff]'s obesity and its impact on her other severe and non-severe impairments, the ALJ's RFC assessment lacks substantial support, as the decision lacks any evidence to support that [Plaintiff]'s obesity was considered at all." *Id.* at 7.

6

Defendant argues that the ALJ's failure to discuss obesity was not error because Plaintiff "did not allege obesity as a basis for her alleged disability or testify at her hearing that her weight affected her functioning," and "an ALJ is not required to address a condition when [a] claimant did not allege she was disabled due to the condition either when she filed her applications or at her hearing."  Def.'s Br. (Doc. 13) at 8.  Defendant further argues that Plaintiff "fail[s] to show that her weight actually caused limitations beyond th[ose] found by the ALJ in her RFC assessment" and "merely speculates regarding the possible effects of her weight on her other impairments, without citing medical findings or other evidence to support her purported problems."  *Id.* at 9.

Plaintiff did not allege obesity as a basis for her disability and has failed to point to any medical records diagnosing or even mentioning her obesity and how it affects her functioning.  An ALJ's failure to address obesity in a decision is not reversible error when a plaintiff fails to allege obesity as a limitation and the medical reports do not indicate obesity would prevent a plaintiff from performing substantial gainful activity. *Fincher v. Astrue*, No. CV-308-108, 2010 WL 739513, at *5 (S.D. Ga. Mar. 1, 2010). Here, the only evidence upon which Plaintiff relies to self-diagnose her obesity is her BMI.  Pl.'s Br. (Doc. 12) at 6-7.  However, this is not sufficient.  Under Social Security Ruling 02-1P, simple allegations with respect to a plaintiff's weight are not enough to establish that a plaintiff's obesity is a severe impairment on her ability to work.

> There is no specific level of weight or BMI that equates with a "severe" or a "not severe" impairment. Neither do descriptive terms for levels of obesity (e.g., "severe," "extreme," or "morbid" obesity) establish whether obesity is or is not a "severe" impairment for disability program purposes. Rather, we will do an individualized assessment of the impact of obesity on

7

an individual's functioning when deciding whether the impairment is severe.

SSR 02-1P, 2002 WL 34686281 (Sept. 12, 2002), *at 4.

The court also observes that an ALJ is "under no 'obligation to investigate a claim not presented at the time of the application for benefits and not offered at the hearing as a basis for disability.'" *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). This is particularly salient where the claimant is represented by counsel. *Id.* "The ALJ is not subject to a heightened duty to discover all of the facts relevant to a claimant's disability claim." *Id.* Plaintiff first raised the issue of obesity in this appeal. Nowhere in the transcript of the hearing does she mention obesity as an impairment, let alone a severe impairment. Plaintiff's weight is mentioned only when the ALJ examined Plaintiff regarding her weight and its fluctuation. Tr. 37. The ALJ was under no obligation to raise the argument for Plaintiff.

Moreover, the Eleventh Circuit and other district courts within this circuit have found that an ALJ did not commit reversible error in circumstances similar to this case. *See, e.g.*, *James v. Barnhart*, 177 F. App'x 875, 877 n.2 (11th Cir. 2006) (per curiam) (finding that the ALJ did not err in failing to find obesity to be a severe impairment where, during her own testimony at the administrative hearing, the plaintiff did not complain that obesity was a functional impairment); *McIntire v. Colvin*, 2:12CV820-WC, 2013 WL 6596955, at *6 (M.D. Ala. Dec. 16, 2013) (concluding claimant was entitled to no relief when claimant failed to explain how her obesity caused further limitations than

8

those the ALJ found and claimant identified no reliable medical opinions supporting limitations resulting from her obesity beyond those stated in her RFC); *Gary v. Astrue*, No. 1:08-cv-411, 2009 WL 3063318, at *2-3 (M.D. Ala. Sept. 22, 2009) (failure to mention obesity or explain conclusion as to whether obesity caused any physical or mental limitations did not provide basis for relief where the claimant identified no evidence in the record to support her position that the condition caused "significant limitations on her ability to work"); *Vickers v. Astrue*, No. 3:08-cv-78, 2009 WL 722273, at *14 (N.D. Fla. Mar. 18, 2009) (remand for failure to mention obesity was not required where the claimant did not show how his obesity impacted his ability to work); *Ingram v. Astrue*, No. 8:07-cv-1591, 2008 WL 2943287, at *6 (M.D. Fla. July 30, 2008) (finding that even though the claimant's weight was noted repeatedly throughout the record, the ALJ's failure to mention obesity or address it in accordance with SSR 02-1p did not constitute grounds for reversal where the claimant had not identified any evidence suggesting that his RFC was affected by his obesity); *Broz v. Astrue*, No. 3:07-cv-204, 2008 WL 1995084, at *15 (N.D. Fla. May 5, 2008) ("[B]ecause Plaintiff has not demonstrated that obesity reduced his functional capacity, the ALJ properly declined to consider it as part of his list of Plaintiff's severe impairments.").

Additionally, Plaintiff does not identify any functional limitations caused by obesity that would conflict with the RFC assessment by the ALJ. Accordingly, even assuming the ALJ erred by not specifically referring to SSR 02-1p or discussing the effect of Plaintiff's obesity in determining his RFC, Plaintiff fails to show how she was harmed by it. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (applying

harmless error analysis in review of social security disability determination); *see also Shinseki v. Sanders*, 556 U.S. 396, 409 (2009) ("the burden of showing that an error is harmful normally falls upon the party attacking the agency's determination").

Like the cases cited above, here, Plaintiff failed to explain how her obesity caused further limitations than those found by the ALJ and Plaintiff did not identify any reliable medical opinions supporting limitations resulting from her obesity beyond those stated in her RFC.  Consequently, Plaintiff is entitled to no relief on this basis.

> **B.      Whether the ALJ properly considered the side effects from Plaintiff's medications on her ability to work**

Plaintiff's second claim is that "the ALJ fail[ed] to discuss, much less consider, the side effects of [Plaintiff]'s medications on her ability to work."  Pl.'s Br. (Doc. 12) at 7.  Plaintiff asserts that, despite evidence that Plaintiff's medications caused her to suffer from chronic fatigue, weight gain, blurred vision, and stomach pains, the ALJ's "decision lacks any evidence that these side effects were considered at all."  *Id.* at 11.   Plaintiff argues that because the ALJ failed to discuss the side effects of Plaintiff's medications, the ALJ's RFC is not supported by substantial evidence.  *Id.*

Defendant asserts that the ALJ did properly consider Plaintiff's side effects, but determined that "Plaintiff simply failed to show that she had side effects from her medications that would have affected her ability to work."  Def.'s Br. (Doc. 13) at 10.  Defendant argues that "the ALJ implicitly discounted Plaintiff's allegations of side effects as part of her determination that Plaintiff's statements concerning her alleged

symptoms were not credible" because "the severity alleged was not consistent with the objective evidence." *Id*. at 11.

As to the Plaintiff's claim that her medications caused her to suffer from chronic fatigue, weight gain, blurred vision, and stomach pains, the court finds that the ALJ did consider these side effects.  Specifically, the ALJ noted that Plaintiff "is exhausted all day" (Tr. 22); "falls asleep" (Tr. 23); "cannot watch an hour-long program, because it is too hard to focus on anything" (Tr. 23); "has memory problems" (Tr. 23); has "fatigue from her illness [that] makes it hard to feel like doing anything at all" (Tr. 18); "has to lie down" "because she is so tired and hurting" (Tr. 18); "lies down for a couple hours" (Tr. 18); "has had an increase in her weight of 75-80 pounds over a 2-year period" (Tr. 22); "has gained a lot of weight" (Tr. 18); and has  stomach pain because the "pain medicine hurts her ulcers" (Tr. 23).  None of Plaintiff's complaints regarding the side effects of her medications were based on any objective evidence, but rather were entirely subjective complaints made by Plaintiff.  After a thorough recounting of Plaintiff's testimony, the ALJ determined that Plaintiff's subjective complaints were not credible to the extent they were inconsistent with the RFC.  Tr. 22-24.

Thus, it is clear from the decision that the ALJ did, in fact, consider the side effects of Plaintiff's medication.  Then, the ALJ determined that Plaintiff's subjective complaints were not credible to the severity alleged based on the inconsistencies between her complaints and the objective evidence of record.  Tr. 24.  Furthermore, Plaintiff has failed to show how the alleged side effects limit her beyond the ALJ's RFC

determination.   For all of the foregoing reasons, the court finds no error in the ALJ's review of the side effects of Plaintiff's medication.

### C.   Whether the ALJ erred in relying on the opinion of a Single Decision Maker in arriving at her RFC assessment

Plaintiff's third claim is that the ALJ erred by "essentially accept[ing]" the opinion of L.N. Hickman, a Single Decision Maker ("SDM"), and adopting it in the RFC.   Pl.'s Br. (Doc. 12) at 12.   Although Plaintiff appears to argue that the ALJ erroneously afforded some weight to the RFC assessment completed by a state agency SDM, the ALJ did not expressly afford any weight to the SDM's assessment.  *Id.* at 14.   In fact, the ALJ never mentioned the SDM's opinion at all in the decision.   Nevertheless, Plaintiff infers such improper reliance because some of the limitations articulated by the ALJ in the RFC coincide with those of the SDM.  *Compare* Tr. 17-18 (ALJ's RFC determination) *with* Tr. 67-68 (SDM Physical RFC Assessment).   However, it is apparent that the ALJ did not adopt wholesale the SDM's findings as her own.   For example, while the SDM found that Plaintiff was unlimited in her ability to be exposed to wetness, humidity, and vibration, *see* Tr. 68, the ALJ found that Plaintiff was to "avoid concentrated exposure" to wetness and humidity and that Plaintiff was precluded from any exposure to vibration.   Tr. 18.   In addition, the ALJ included limitations related to Plaintiff's mental functioning, limiting Plaintiff to simple tasks, a limitation not included in the SDM's assessment.   Tr. 18.   In sum, considering that the ALJ properly evaluated Plaintiff's medical evidence, properly

assigned weight to the medical opinions of record,[5] did not expressly assign any weight to the SDM's opinion in formulating Plaintiff's RFC, and indeed included more restrictive limitations than did the SDM in some instances, and that Plaintiff has not identified any evidence in the record which conflicts with the ALJ's findings, the court simply cannot conclude that any similarity between the ALJ's RFC and the findings of the agency SDM is more than coincidence or that any reliance by the ALJ was not harmless error. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (unpublished decision) (finding any reliance by ALJ on SDM opinion, which ALJ had mistakenly credited as physician opinion, "was harmless because the ALJ stated that he considered *all* of the evidence in the record . . . and there is nothing in the record to indicate that the opinion of the SDM was anything more than cumulative of other evidence, let alone dispositive").

Lastly, Plaintiff takes issue with the treatment of Plaintiff's mother's opinion, arguing that "there is no indication that the ALJ adopted any of the statements made in the Third Party Function Report provided by [Plaintiff]'s mother, Janice Barron, despite the ALJ's statement that this was given some weight." Pl.'s Br. (Doc. 12) at 13. The court finds that Plaintiff's argument misconstrues the ALJ's statement. After pointing out that Plaintiff's mother is not medically trained and cannot be considered a

---

[5] Plaintiff also appears to challenge the ALJ's decision to give great consideration to the opinion of Dr. G. Malone Chandler without explaining why Dr. Chandler's statement that Plaintiff "should not" bend over or perform similar activity was not adopted in the RFC. Pl.'s Br. (Doc. 12) at 12. However, Plaintiff's argument fails because Plaintiff is misstating Dr. Chandler's limitations on Plaintiff. Dr. Chandler actually stated that Plaintiff should not strain or bend over "for an extended period of time." Tr. 240. This is consistent with the RFC limitation that Plaintiff can only occasionally balance, stoop, kneel, crouch, and crawl. Tr. 17.

disinterested third party by virtue of her relationship with Plaintiff, the ALJ "g[a]ve some weight to *some* of [the mother's] statements" because, the ALJ explained,   "[Plaintiff] does have some impairments that result in some limitations."  Tr. 26 (emphasis added). Essentially, the ALJ gave weight to the mother's statements to the extent that the statements established that Plaintiff does suffer from some impairments that cause some limitations.  The ALJ's decision was supported by substantial evidence and the court finds no error.

## VI.   CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED.

A separate judgment will issue.

Done this 17th day of August, 2015.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE

14